IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOSCOW DYNAMO<br>Leningradski pr. 36<br>Suite 505<br>Moscow, Russia<br>125167 | *<br>*<br>*<br>* | |
| Petitioner | * | |
| v. | * | CIVIL ACTION NO. |
| ALEXANDER M. OVECHKIN<br>c/o Washington Capitals<br>Market Square North<br>401 - 9th Street, N.W.<br>Suite 750<br>Washington, D.C. 20004 | *<br>*<br>*<br>* | |
| Respondent | * | |
| * * * * | * * * * * * | |

PETITION FOR CONFIRMATION OF ARBITRATION
AWARD AND FOR PERMANENT INJUNCTIVE RELIEF

Petitioner Moscow Dynamo, by its undersigned counsel, files this petition, pursuant to 9 U.S.C. § 201, for the confirmation of a foreign arbitration award in its favor and against respondent Alexander M. Ovechkin.

## SUMMARY

1.   On October 6, 2005, Moscow Dynamo, a Russian ice hockey club, filed a Statement of Claim ("Claim") with the Arbitration Committee ("Arbitration Committee") of the Russian Ice Hockey Federation and Professional Hockey League ("PHL"). The Claim sought to enforce a contract between Moscow Dynamo and Alexander Ovechkin ("Ovechkin"), an ice hockey player and a Russian national, under which Ovechkin is contractually obligated to play for Moscow Dynamo during the 2005-2006 hockey season. By way of relief the Claim sought, among other things, an award prohibiting

#490591v.1

Ovechkin from playing for any other team during that season. Ovechkin currently purports to be employed by, and is playing for, the Washington Capitals in the National Hockey League ("NHL"). A copy of the Claim, including its attachments, and a certified English translation of the Claim and its attachments, are attached to this petition as Exhibit A.

2. Ovechkin was served with a copy of the Claim and advised of the hearing date (October 20, 2005) on October 7, 2005, and, on October 10, 2005, was provided a copy of the formal notice of the date and place of the arbitration hearing. Ovechkin's sports agents (in both the United States and Russia), his current employer (the Washington Capitals), the NHL, the NHL Players' Association, and Ovechkin's parents, in Moscow, were also served with the Claim and the notice of the hearing date. Despite this notice, Ovechkin did not either personally or through counsel appear at the hearing, nor did he contact the Arbitration Committee or claimant's counsel before the hearing to request a different date or otherwise seek to reschedule the hearing. See infra at ¶¶ 21-22.

3. On October 20, 2005, the Arbitration Committee convened an arbitration proceeding, in accordance with its rules, and, on October 21, 2005, issued an arbitration award in favor of Moscow Dynamo and against Ovechkin (the "Award"). The Award enforced Moscow Dynamo's contractual rights to Ovechkin's services and prohibited him from playing for any other hockey team during the 2005-2006 hockey season. A copy of the Award, and a certified English translation of the Award, are attached to this

petition as Exhibit B.[1] By its terms, the Award prohibits Ovechkin from playing for the Washington Capitals during the 2005-2006 season.

4.  The Award is enforceable in this Court under the terms of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *reprinted in* 9 U.S.C.A. § 201 note (the "Convention").

5.  By this petition, Moscow Dynamo seeks to enforce the Award. The background against which the Award was issued, and on which relief is sought herein, is spelled out in the Award itself, but is summarized beginning at paragraph 10 below. References to "Attachments" in this petition are to the attachments (referenced in the translated documents as "supplements") to the Claim, which are referred to in the Award. See Exhibit B (Award) at 2-3.

## PARTIES AND JURISDICTION

6.  Petitioner Moscow Dynamo is a regional nonprofit organization duly organized under the laws of the Russian Federation. Moscow Dynamo is a Russian sports club that, among other things, fields an ice hockey team that is a member (and 2004-2005 champion) of the Russian "Super League," the highest division of the PHL.

7.  Respondent Ovechkin, a Russian national, works in the District of Columbia and currently plays hockey for the Washington Capitals.

8.  This Court has jurisdiction over this matter pursuant to 9 U.S.C. §§ 203, in that Moscow Dynamo is seeking to enforce in this Court a foreign arbitral award under the Convention.

9.  Venue is proper in this judicial district under 9 U.S.C. § 204.

---

[1] Exhibits A and B are each comprised of (a) a certification, (b) the Russian original language document, and (c) the English translation. For the Court's convenience, a tab has been inserted into each Exhibit to indicate the start of the English version of the document.

## **BACKGROUND**

### **Facts**

10. Ovechkin grew up in, and was developed through, Moscow Dynamo's youth system in Russia. Ovechkin is universally recognized as a rising star and a player of unique talent. He had a highly successful career as a teenager with the Moscow Dynamo organization, and has played on Russian national teams. Ovechkin was instrumental in Moscow Dynamo winning the Super League championship last season. He was also selected by the Washington Capitals as the first overall pick in the 2004 NHL draft. See discussion, Exhibit B (Award) at 3.

11. Pursuant to a contract dated July 1, 2004, Ovechkin played hockey with Moscow Dynamo for the 2004-2005 Super League season. That contract expired on April 30, 2005. On or about April 26, 2005, Moscow Dynamo offered Ovechkin a new contract for the 2005-2006 hockey season with a 30% raise. That offer constituted a "qualifying offer" under the rules of the PHL, permitting Moscow Dynamo to retain "matching rights" (described in paragraphs 13 and 14 below) with respect to Ovechkin, should he sign a contract with another PHL club for the 2005-2006 season. See discussion and cited attachments, Exhibit B (Award) at 4-5.

12. On June 30, 2005, Ovechkin signed a one-year PHL Standard Player's Contract with the Russian hockey club Avangard Omsk ("Avangard") for the 2005-2006 PHL season by which Ovechkin bound himself to play only for Avangard (to the exclusion of all other teams in Russia and worldwide) during the term of the contract, and to be bound by all of the rules and regulations of the team and of the PHL. On the same day, Ovechkin and Avangard also entered into a "Confidential Addendum to the Avangard Contract," which contained a compensation provision in the amount of

$1,800,000 USD for the 2005-2006 season, and gave Ovechkin the right to terminate the contract, and be freed of all obligations to Avangard, if he accepted and signed a contract offered by an NHL team before midnight, Eastern U.S. time zone, on July 20, 2005. See discussion and cited attachments, Exhibit B (Award) at 3-5. The Confidential Addendum to the Avangard Contract and PHL Standard Player's Contract with the hockey club Avangard Omsk are jointly referred to in this petition as the "Avangard Contract."

13. Under the PHL regulations, which are binding on all teams and players in the PHL (and which became binding on Ovechkin when he signed the Avangard Contract by the terms of that contract), "matching rights" permit a team that makes a qualifying offer to a player (the "former team") to match an offer that is made by another PHL team and accepted by the player. When the former team matches such offer (as Moscow Dynamo did here), the former team and the player become parties to a binding contract, and the player is bound to play for the former team for the term of the matched contract. See discussion and cited attachment, Exhibit B (Award) at 4.

14. To be enforceable a matching offer is required to match only the term (i.e. duration) and the financial aspects of the player's new contract. Other, non-financial, terms need not be matched. See discussion and cited attachments, Exhibit B (Award) at 4.

15. On July 1, 2005, Moscow Dynamo sent a letter to Avangard (copied to the PHL) timely exercising its matching rights with respect to Ovechkin by offering him financial terms matching those set out in the Avangard Contract. Moscow Dynamo was not required to "match" the early termination right in the Avangard Contract because that was a non-financial term of the Avangard Contract. As the Arbitration Committee confirmed, when Moscow Dynamo matched the financial terms in the Avangard

Contract, thus creating a binding agreement between Ovechkin and Moscow Dynamo for the 2005-2006 hockey season that incorporated and was subject to the rules of the PHL, the right to employ Ovechkin for the 2005-2006 season belonged exclusively to Moscow Dynamo. See discussion and cited attachments, Exhibit B (Award) at 3-5.

16. In a press release dated August 5, 2005, the Capitals announced that they had, that day, agreed to terms on a three-year contract with Ovechkin to play in the NHL starting with the 2005-2006 season. See discussion and cited attachment, Exhibit B (Award) at 4-5. According to subsequent press reports, the Capitals and Ovechkin signed a contract, embodying those terms, on August 31, 2005. See Exhibit C (8/31/05 press reports). Thus, even if Moscow Dynamo had been required to offer the early termination right to Ovechkin as provided in the Confidential Addendum to the Avangard Contract--which the Arbitration Committee found that Moscow Dynamo did not have to do--that right was lost as of July 21, 2005. Ovechkin's agreement to the terms of a contract with the Capitals two weeks after the date set by the Avangard Contract would not have allowed him to avoid his responsibilities under the Avangard Contract and leave the PHL for the NHL, or any other hockey league. See discussion and cited attachments, Exhibit B (Award) at 5.

17. Thereafter, but prior to the commencement of the 2005-2006 NHL season, Moscow Dynamo advised the Washington Capitals, Ovechkin, and the NHL that Moscow Dynamo had the exclusive rights to Ovechkin's services during the 2005-2006 season and demanded that Ovechkin honor his contract with Moscow Dynamo and that he not be allowed to play with the Washington Capitals. See attachments A-C to Affidavit of William C. Sammons, Esquire, attached as Exhibit D (copies of correspondence to Ovechkin, the NHL, and the Capitals). See also discussion, Exhibit B

(Award) at 2. On October 5, 2005, Ovechkin started his season for the Washington Capitals and he continues to play for that team as of today. See discussion, Exhibit B (Award) at 3.

### The Arbitration

18.  Article 6 of the PHL's Standard Player's Contract, which is binding on all PHL players and forms a part of the Avangard Contract (and, therefore, the contract between Ovechkin and the Moscow Dynamo), requires that all disputes arising out of the contract be arbitrated under the rules of the PHL. Specifically the contract provides:

> 6.1.  All individual labor disputes (unadjusted differences between the Club and the Professional Player) shall be considered by the Arbitration Committee of the RIHF and the PHL and the parties agree to the exclusive jurisdiction of the Arbitration Committee; the parties also agree that they shall abide by the terms of the awards of the Arbitration Committee. By doing so, the Professional Player and the Club agree that the decisions of the Arbitration Committee shall be recognized worldwide pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, New York, 1958.

See Exhibit A (Claim), Attachment No. 1, Article 6.1. See also discussion/finding at Exhibit B (Award) at 3.[2]

19.  On October 6, 2005, Moscow Dynamo commenced an arbitration against Ovechkin with the Arbitration Committee. Moscow Dynamo's Claim in that arbitration sought an order enjoining Ovechkin from working for the Washington Capitals or any

---

[2] The excerpt quoted above is from Article 6.1 of the PHL Standard Player's Contract that Ovechkin signed with the Moscow Dynamo for the 2004-2005 hockey season. See Exhibit A (Claim), Attachment No. 1 (containing both signed and unsigned versions of the Standard Player's Contract). As recognized in the Award, see Exhibit B, at 3, the same provision was present in the Avangard Contract, which was also a PHL Standard Player's Contract. The PHL rules require that all contracts between member clubs and PHL players be in that standard form. See Exhibit A (Claim), Attachment No. 2 (Rules) at 1.2. For the purposes of the arbitration proceeding, Moscow Dynamo attached only the first two, and last, pages of the Standard Player's Contract between Avangard and Ovechkin (the pages identifying the duration of the contract and the parties' signatures) and, therefore, only those pages are found in this filing. See Exhibit A (Claim), Attachment No. 4. But the contract, in its entirety, was in the standard form, and contained the standard provisions, including Article 6.1, as the Award makes clear.

other professional hockey team until his contract with Moscow Dynamo expires by its terms on April 30, 2006. See Exhibit A (Claim) at 3.

20. As the Arbitration Committee found, Ovechkin was served with the Claim and advised of the date of the arbitration hearing on October 7, 2005; and on October 10, 2005, Ovechkin was provided copies of the formal notice of the date and place of the arbitration hearing, both by the Arbitration Committee and by a separate letter from counsel for the petitioner. See discussion/ finding, Exhibit B (Award) at 1-2; Exhibit D (Sammons Aff.) (attaching service verifications and correspondence). See also Affidavit of Alexander Berkovich, Esquire, attached as Exhibit E (attaching letters provided to Arbitration Committee). In addition, and as found by the Arbitration Committee, the Washington Capitals, the NHL, and Ovechkin's agents in North America and Russia were served with the Claim on October 7, 2005, and with notice of the hearing on October 10, 2005 (Ovechkin's parents also received this notice). See discussion, Exhibit B (Award) at 2.

21. On October 20, 2005, the Arbitration Committee held a hearing on Moscow Dynamo's petition. According to the Award, Ovechkin did not attend the hearing in person, or through counsel, nor did he or his representatives make any effort to reschedule the hearing. See Exhibit B (Award) at 2. See also Exhibit D (Sammons Affidavit) at ¶ 7 (counsel received no response to letters sent to Ovechkin, his agents, the NHL, and the NHL Players' Association). Although not expressly stated in the Award, Sergey Isakov, an agent for Ovechkin who had represented Ovechkin in negotiations leading up to the 2004-2005 contract with Moscow Dynamo, see Exhibit B (Award) at 4, attended the hearing (albeit as an observer and not as a representative of Ovechkin for the purpose of the hearing). See Exhibit E (Berkovich Affidavit).

22. On October 21, 2005, upon consideration of the merits and in accordance with its rules, the Arbitration Committee rendered a decision and entered the Award. The Award enjoins Ovechkin from working for any professional hockey club other than Moscow Dynamo until his contract with Moscow Dynamo expires by its terms on April 30, 2006. In particular, the Arbitration Committee found that:

> Dynamo at present has a valid contract with Ovechkin. Dynamo has offered to Ovechkin in a timely manner a new contract with a 30% increase of the total amount of compensation, thus reserving the matching rights with respect to signing the contract with Ovechkin; and Dynamo in timely a manner has agreed to match the financial conditions of the preliminary contract between Avangard and Ovechkin. Thereby, the contract between Dynamo and Ovechkin has come into full force and effect as of July 1, 2005 with the compensation in the amount of $1,800,000 (one million eight hundred thousand) dollars and all other terms and conditions of a standard contract of a PHL player.

Exhibit B (Award) at 4.

23. Having found that a valid enforceable agreement exists between Ovechkin and Moscow Dynamo, the Arbitration Committee decided:

    a. To confirm that the contract between Dynamo and Ovechkin for the 2005-2006 season is in full force and effect.

    b. That Ovechkin is in breach of his contract with Dynamo for the 2005-2006 season.

    c. To ban Ovechkin from playing in the 2005-2006 season for any club other than Dynamo in accordance with paragraphs 6.4 and 6.5 of the contract between Dynamo and Ovechkin for the 2005-2006 season and the PHL standard player's contract.

    d. Considering the undisputed unique talent of Ovechkin, the loss of whose services cannot be adequately compensated to Dynamo, which results in Dynamo suffering considerable damages, it is

> decided that this decision of the AC of the RIHF and the PHL including the decision banning Ovechkin from playing in the 2005-2006 season for any club other than Dynamo shall become effective immediately according to paragraph 22 of the Regulations on AC of the RIHF and the PHL.

Exhibit B (Award) at 5.

24. Ovechkin, his agents, the Washington Capitals, and the NHL all received notice of the Award. See Exhibit D (Sammons Affidavit) at ¶ 3.D (letter to Ovechkin dated October 21, 2005).

25. Ovechkin was permitted by the PHL rules to appeal the Award to the Russian Arbitration Court for Sports (although titled a "court," the Arbitration Court is actually a part of the Russian sports arbitration process, and is not a judicial court). Ovechkin did not pursue an appeal and the Award is now unalterably final.

26. Ovechkin has failed to comply with the Award and continues to play hockey for the Washington Capitals in violation of the Award and in breach of his contractual obligations to Moscow Dynamo.

## LEGAL CONSIDERATIONS

27. Article III of the Convention provides that: "Each Contracting State shall recognize arbitral awards as binding and enforce them as in accordance with [its] rules and procedures." See 9 U.S.C. § 201 at Note. The United States and the Russian Federation are both signatories to, and "Contracting States" in respect of, the Convention. Id. Chapter 2 of the Federal Arbitration Act ("FAA") provides the mechanism for enforcement of awards under the Convention. It provides that the Convention "shall be enforced in United States Courts," 9 U.S.C. § 201, and vests original jurisdiction in "all district courts of the United States" over proceedings falling under the Convention. 9 U.S.C. § 203. Further, 9 U.S.C. § 207 provides that:

> any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention.

This Court, then, has the jurisdiction and statutory authority to confirm and enforce the Award. No grounds for refusal or deferral of recognition or enforcement of the Award specified in the Convention are present here.

28. The equitable relief imposed by the Arbitration Committee was proper. "It is beyond question that an arbitrator may have broad equity powers if the rules under which he is operating provide for equitable relief." Brown v. Coleman Co., Inc., 220 F.3d 1180 (10th cir. 2000) (citing Gilmer v. Interstate/Johnson Lane Corporation, 500 U.S. 20, 32 (1991)). Injunctive relief was plainly provided for in Article 6.5 of the PHL rules, which were incorporated in Ovechkin's PHL Standard Player's Contract:

> 6.5. The Club and the Professional Player agree that the services provided by the Player are of a unique character, the loss of which cannot be adequately compensated to the Club. The Player therefore agrees that the Club shall have the right through the IIHF, RIHF and the PHL to enjoin him from playing for any other club in the Russian Federation or any other country. The present conditions by no means limit the rights of the Club with respect to submitting any other claims against the Professional Player.

See Exhibit A (Claim), Attachment No. 2 at Article 6.5. Further, the Standard Player's Contract, signed by Ovechkin, expressly states that decisions of the "Arbitration Committee shall be recognized worldwide pursuant to the Convention." See paragraph 18, infra. The mechanism for enforcing the Award in the United States is for the Court to enter a final judgment and order confirming the Award. It is also appropriate for the Court in aid of its enforcement of the Award to enter its own injunction permanently

enjoining Ovechkin from playing hockey this season for any team other than Moscow Dynamo.

29. Finally, and although not a requirement for the enforcement of the Award, enforcement and entry of the requested relief in this case is fully consistent with the law and policy applied by this and other United States courts. This Court has the clear authority to issue a negative injunction ordering a party to not take action in breach of a valid agreement. See Ellis v. James v. Hurson Assocs., Inc., 565 A.2d 615, 619-21 (D.C. 1989) (employer entitled to preliminary injunction against former employee to enforce noncompetition agreement). This authority is commonly applied in the context of personal services contracts between teams and professional athletes, such as the contract at issue here. See e.g., Houston Oilers, Inc. v. Neely, 361 F.2d 36, 40-41 (10th Cir. 1966) (affirming the grant of an injunction that prevented an athlete from playing professional football for teams other than the plaintiff with which he had a personal services contract); Washington Capitols Basketball Club v. Barry, 304 F. Supp. 1193, 1197-98 (N.D. Cal.) (granting preliminary injunction preventing a professional basketball player from violating personal services contract by playing for team in another professional league, because "money alone" cannot replace the loss of a superior athlete to a professional sports franchise), aff'd, 419 F.2d 472 (9th Cir. 1974); Marchio v. Letterlough, 237 F. Supp. 2d 580, 590 (E.D. Pa. 2003) (same). As recently as November 4, 2005, this Court applied the same principles expressed in the cases cited above to enjoin--at the Washington Capitals' request--a professional athlete from playing hockey in the Russian PHL in light of an NHL Standard Player's Contract between the athlete and the Washington Capitals for the 2005-2006 hockey season. See TRO Order entered in

Lincoln Hockey LLC, doing business as the Washington Capitals v. Alexander Semin et al., Case No. 05 CV 02094 (HHK), attached to this petition as Exhibit F.

## CONCLUSION

30. Ovechkin should not be permitted to continue playing professional hockey in breach of his contractual obligations to Moscow Dynamo and in violation of the Award. His effort to do so cannot be countenanced considering the broad injunctive relief ordered by the Arbitration Committee and the requirement that the Award be enforced in the United States as required by the Convention. Pursuant to the Convention, the Award should be enforced and a final order and judgment enjoining Ovechkin from playing this season for any team other than Moscow Dynamo should be expeditiously entered.

WHEREFORE, petitioner Moscow Dynamo respectfully moves this Court for an Order confirming the Award and directing that judgment be entered thereon, together with costs and attorneys' fees, and for such other and further relief as this Court deems just and proper. A proposed order is attached.

*[signature]*
William C. Sammons
William S. Heyman, Bar No. 473451
Toyja E. Kelley, Bar No. 482977
Tydings & Rosenberg LLP
  100 East Pratt Street, 26th Floor
  Baltimore, Maryland 21202
  (410) 752-9700

Attorneys for Petitioner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __18TH__ day of November 2005, a copy of the foregoing Petition for Confirmation of Arbitration Award and for Permanent Injunctive Relief was hand delivered to:

>Alexander M. Ovechkin
>c/o Donald Fishman, Esquire
>(Authorized to accept service for Mr. Ovechkin)
>Market Square North
>401 - 9th Street, N.W.
>Suite 750
>Washington, D.C. 20004

_____
William S. Heyman

#490591v.1      14