UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MOSCOW DYNAMO,                                  :
                                                :
            Petitioner,                  :
                                                :
  against                                      :   Civil Action No. 05-2245-EGS
                                                :
ALEXANDER M. OVECHKIN,                          :
                                                :
            Respondent.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# REPLY MEMORANDUM OF LAW OF RESPONDENT
# ALEXANDER M. OVECHKIN IN FURTHER SUPPORT
# OF HIS MOTION TO DISMISS THE PETITION FOR
# LACK OF SUBJECT MATTER JURISDICTION


Peter J.W. Sherwin, Esq. (admitted *pro hac vice*)
Steven H. Holinstat, Esq. (admitted *pro hac vice*)
Edward T. Werner, Esq. (admitted *pro hac vice*)
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Phone: (212) 969-3900

  -and-

Robert M. Bernstein, Esq. (D.C. Bar No. 490166)
PROSKAUER ROSE LLP
1233 Twentieth Street NW, Suite 800
Washington, DC 20036-2396
Phone: (202) 416-6800

*Counsel for Respondent*
*Alexander M. Ovechkin*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

I.   THERE IS NO SUBJECT MATTER JURISDICTION
     BECAUSE MOSCOW DYNAMO HAS NOT PRODUCED A
     WRITTEN AGREEMENT TO ARBITRATE SUFFICIENT
     UNDER ARTICLE II OF THE CONVENTION ............................................................3

     A.   MOSCOW DYNAMO CONCEDES THAT THE PURPORTED 2005-2006
          MOSCOW DYNAMO CONTRACT DOES NOT SATISFY ARTICLE II OF
          THE CONVENTION ................................................................................................3

     B.   THERE IS NO "EXCHANGE" OF DOCUMENTS THAT CREATED AN
          AGREEMENT TO ARBITRATE SUFFICIENT UNDER ARTICLE II OF THE
          CONVENTION ........................................................................................................5

          1.   Moscow Dynamo's Tendered
               "Exchange" Is Insufficient on Its Face .....................................................6

          2.   Moscow Dynamo's Tendered
               Cases Are Clearly Inapposite ...................................................................8

     C.   THIS COURT IS NOT BOUND BY THE ARBITRATION COMMITTEE'S
          DETERMINATION OF AN AGREEMENT TO ARBITRATE ........................................10

II.  MOSCOW DYNAMO'S REQUEST THAT THIS COURT
     DECIDE THE MERITS OF THE PETITION BEFORE
     MR. OVECHKIN HAS ANSWERED SHOULD BE REJECTED ..............................11

CONCLUSION ............................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page**

### **TREATIES**

Convention, Art. II(1) ..........................................................................................................3

Convention, Art. II(2) ..........................................................................................................3

### **STATUTES**

FED. R. CIV. P. 12(a)(4)(A)................................................................................................11

### **CASES**

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
    109 F. Supp. 2d 1236 (S.D. Cal. 2000).......................................................................8-9

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
    358 F.3d 1286 (11th Cir. 2004) ..................................................................................10

*Filanto, S.p.A. v. Chilewich Int'l Corp.*,
    789 F. Supp. 1229 (S.D.N.Y. 1992) ..............................................................................9

*Genesco v. T. Kakiuchi & Co., Ltd.*,
    815 F. 2d 840 (2d Cir. 1987).........................................................................................8

*Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*,
    2005 WL 1118130 (D. Kan. May 10, 2005)...............................................................10

*Richardson v. Aetna U.S. Healthcare*,
    2003 WL 24009007 (D.D.C. Sept. 29 2003) .............................................................12

*Sen Mar, Inc. v. Tiger Petroleum Corp.*,
    774 F. Supp. 879 (S.D.N.Y. 1991) ................................................................................9

*Standard Bent Glass Corp. v. Glassrobots Oy*,
    333 F.3d 440 (3d Cir. 2003)..........................................................................................8

*York Hannover Holding A.G. v. Am. Arbitration Ass'n.*,
    1993 WL 159961 (S.D.N.Y. May 11, 1993)...............................................................14

Mr. Ovechkin respectfully submits this reply memorandum of law in further support of his motion to dismiss Moscow Dynamo's Petition pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1]

## **PRELIMINARY STATEMENT**

Moscow Dynamo acknowledges, as it must, that this Court's subject matter jurisdiction to consider its Petition is limited and that, in order to invoke it, there must be a written agreement to arbitrate by Mr. Ovechkin that complies with Article II of the Convention.  Moscow Dynamo also concedes that its purported 2005-2006 contract with Mr. Ovechkin fails to satisfy the requirements of Article II because it is unsigned and that this Court's subject matter jurisdiction cannot be premised thereon.  Those fatal concessions end the matter and require dismissal because that is clearly the agreement it invoked in its Statement of Claim and Petition as containing the purported written arbitration agreement.  (Point I.A below.)

Moscow Dynamo nonetheless attempts to argue that, instead, there was supposedly an "exchange" of documents that created a written arbitration agreement between it and Mr. Ovechkin, but a cursory review of that purported exchange belies that assertion.  That "exchange" does not embody an agreement to arbitrate but rather is Moscow Dynamo's argument for implying the existence of the purported 2005-2006 contract, which it concedes is insufficient under the Convention, and so this argument is nothing but bootstrapping.  Moreover, that purported "exchange" is not actually an exchange but rather a unilateral offer by Moscow Dynamo, to which Mr. Ovechkin never responded or otherwise affirmatively acted to accept.  (Point I.B.1 below.)  And very significantly, *none* of the cases upon which Moscow Dynamo relies comes close to providing this Court with any basis to hold that Moscow Dynamo's offer to

---

[1]   This brief uses the same defined terms as in the Memorandum of Law of Respondent Alexander M. Ovechkin in Support of His Motion to Dismiss the Petition for Lack of Subject Matter Jurisdiction (the "Moving Br.").

Mr. Ovechkin is sufficient to invoke this Court's limited subject matter jurisdiction. (Point I.B.2 below.) Therefore, in the absence of a written agreement to arbitrate by Mr. Ovechkin, Moscow Dynamo has failed to satisfy the gate-keeping requirements of the Convention, and its Petition must be dismissed.

This is a fair and appropriate result. The Convention did not open up the United States to general recognition and enforcement of all foreign arbitral awards, but rather only allows consideration of those awards that were the product of certain objective types of arbitration agreements. Indeed, it is fundamental that a party cannot be compelled to arbitrate without his consent, and in specific Article II of the Convention requires that such consent be found in a written agreement to arbitrate between the parties.[2] Because Mr. Ovechkin did not consent to arbitrate the underlying dispute in a signed agreement or in an exchange of documents, Moscow Dynamo cannot invoke the Convention. That does not necessarily mean that the award or the arbitration is worthless or invalid in Russia or elsewhere; it just means that it cannot be enforced under the Convention in the United States. Similarly, that does not mean that Moscow Dynamo has no claim or recourse with respect to its asserted rights under the purported 2005-2006 contract; it just means that it should have brought its claims in the appropriate *judicial* forum in Russia and thereby allow Mr. Ovechkin the procedural safeguards attendant to a judicial proceeding that he did not consent to waive through arbitration, including the right to *an independent judicial* determination of the dispute and the right to appeal on the merits any decision rendered thereby.

The Court should dismiss the Petition for lack of subject matter jurisdiction.

---

[2]   Indeed, Moscow Dynamo acknowledges that the Convention does not recognize all agreements to arbitrate, such as oral agreements. (Moscow Dynamo's opposition brief ("Opp. Br.") at 15.)

2

**ARGUMENT**

I. **THERE IS NO SUBJECT MATTER JURISDICTION BECAUSE MOSCOW DYNAMO HAS NOT PRODUCED A WRITTEN AGREEMENT TO ARBITRATE SUFFICIENT UNDER ARTICLE II OF THE CONVENTION**

   A. **MOSCOW DYNAMO CONCEDES THAT THE PURPORTED 2005-2006 MOSCOW DYNAMO CONTRACT DOES NOT SATISFY ARTICLE II OF THE CONVENTION**

Moscow Dynamo's opposition brief either affirmatively concedes or does not dispute the following three key points that make this an open and shut case, mandating the dismissal of the Petition for lack of subject matter jurisdiction:

- First, Moscow Dynamo concedes that this Court does not have subject matter jurisdiction even to consider whether to enforce the Award unless Moscow Dynamo has tendered an agreement to arbitrate that satisfies the requirements of Article II of the Convention. (Opp. Br. at 13.)

- Second, Moscow Dynamo does not dispute that Article II requires that such arbitration agreement must: (a) be contained in a writing signed by the parties or in an exchange of letters or telegrams; and (b) cover the dispute submitted to arbitration. Convention, Arts. II (1) and (2).

- Third, Moscow Dynamo does not dispute that the purported 2005-2006 Moscow Dynamo Contract fails to qualify as an "agreement in writing" under Article II(2) of the Convention because, among other things, it is not signed by Mr. Ovechkin and Moscow Dynamo.

In light of the foregoing, Moscow Dynamo now claims that it did not invoke the arbitral clause of the purported 2005-2006 Moscow Dynamo Contract to have the Arbitration Committee determine whether Mr. Ovechkin breached that very contract by not playing for them during the 2005-2006 season. In fact, Moscow Dynamo accuses Mr. Ovechkin of relying on that agreement

3

as an "intentional obfuscation of the issue." (Opp. Br. at 8.) Nothing could be further from the truth.[3]

The fact that Moscow Dynamo invoked the arbitral clause in the purported 2005-2006 Moscow Dynamo Contract is clear from Moscow Dynamo's Statement of Claim, which specifically states that it is "initiating an arbitration proceeding … against Ovechkin based on Article 6 of the PHL Standard Player's Contract between Ovechkin and Dynamo." (Statement of Claim (Pet. Ex. B) at 1.) Moscow Dynamo reiterates this fact in the Petition, stating that "Article 6 of the PHL's Standard Player's Contract, which is binding on all PHL players and forms a part of the Avangard Contract (*and, therefore, the contract between Ovechkin and the Moscow Dynamo*), requires that all disputes *arising out of the contract* be arbitrated." (Pet. ¶ 18 (emphasis supplied).) These statements can only refer to the purported 2005-2006 Moscow Dynamo Contract, and they do not indicate in any way that the arbitration is being initiated pursuant to some "exchange" of letters.

Moreover, Moscow Dynamo sought relief exclusively under the purported 2005-2006 Moscow Dynamo Contract, specifically: (1) a declaration that *that contract* was in effect; (2) a finding that Mr. Ovechkin was in breach of *that contract*; and (3) an injunction precluding Mr. Ovechkin from playing during the 2005-2006 season for any team other than Moscow Dynamo pursuant to *that contract*. (Statement of Claim at 2-3 (Pet. Ex. B); Pet. ¶ 1.) Significantly, Moscow Dynamo neither sought, nor was granted, any relief under any other contract or purported exchange of letters.

---

[3] Moscow Dynamo also wrongfully accuses Mr. Ovechkin of spending the bulk of his moving brief reciting the facts surrounding the Petition for the purpose of convincing the Court that he is likely to prevail on his Article V defenses if the Court determines that there is subject matter jurisdiction over the Petition. Mr. Ovechkin is confident that he would indeed prevail on his available Article V defenses (should there ever be a need to raise them), but the factual background was simply provided to give this Court an overview of the facts.

Furthermore, by reviewing the provisions of the purported 2005-2006 Moscow Dynamo Contract, there can be no doubt that the entire arbitration centered around whether Mr. Ovechkin allegedly breached ¶ 3.1 of that contract. That provision requires that Mr. Ovechkin "give his exclusive playing services, knowledge and skills only to the Club [Moscow Dynamo]; to complete his contract term and not to enter into other agreements with other hockey clubs and organizations in the Russian Federation and abroad for the whole term of the contract." (Sherwin Decl. Ex. 1, ¶ 3.1.)[4]

In short, Moscow Dynamo clearly invoked the arbitration provision of the 2005-2006 Moscow Dynamo Contract. For it to suggest, as it does now, that it never invoked the arbitration clause in the very agreement under which it sought relief from the Arbitration Committee is patently absurd. Moscow Dynamo has only abandoned its reliance on the purported 2005-2006 Moscow Dynamo Contract because it concedes, as it must, that that document is not signed and therefore not cognizable under Article II of the Convention. (*See* Opp. Br. at 8.) Moscow Dynamo's belated attempt to disclaim reliance on the purported 2005-2006 Moscow Dynamo Contract should be summarily rejected.

Given Moscow Dynamo's concession that the unsigned 2005-2006 Moscow Dynamo Contract does not qualify as a sufficient agreement to arbitrate under Article II of the Convention, the Petition should be dismissed for lack of subject matter jurisdiction.

**B.   THERE IS NO "EXCHANGE" OF DOCUMENTS THAT CREATED AN AGREEMENT TO ARBITRATE SUFFICIENT UNDER ARTICLE II OF THE CONVENTION**

To attempt to avoid dismissal of its Petition, Moscow Dynamo now seeks to invent in its opposition brief a written agreement to arbitrate from a patchwork of documents attached to its

---

[4]   Paragraph 2.1 defines the term of the contract as commencing on July 21, 2005 and expiring on April 30, 2006, *i.e.*, the duration of the 2005-2006 hockey season. (*Id.* ¶ 2.1.)

5

Petition in the hopes of creating an "exchange" of documents under Article II(2) of the Convention. This expedient argument is to no avail on its face and according to the very cases upon which Moscow Dynamo relies.

### 1.     **Moscow Dynamo's Tendered "Exchange" Is Insufficient on Its Face**

The purported "exchange" is insufficient on its face. First, the documents allegedly comprising the "exchange" are the very documents that, according to Moscow Dynamo, create the purported 2005-2006 Moscow Dynamo Contract, and, as Moscow Dynamo concedes, that agreement does not qualify as a valid agreement to arbitrate under the Convention. Second, there simply is no "exchange" of documents that is sufficient under Article II of the Convention to qualify as a valid agreement to arbitrate by Mr. Ovechkin. In fact, this so-called "exchange" does not include any document from Mr. Ovechkin to Moscow Dynamo, let alone one in which he agrees to have anything to do with Moscow Dynamo much less arbitrate the dispute that is the subject of the Award.

That is demonstrated starkly by a simple review of the three documents that, according to Moscow Dynamo, constitute the "exchange":

The first document is a letter dated April 26, 2005 from Moscow Dynamo to Mr. Ovechkin offering to employ him for the 2005-2006 hockey season. (Opp. Br., Ex. C.) It is undisputed that Mr. Ovechkin never replied to this letter nor did he in any way evidence his acceptance thereof either expressly or implicitly – and Moscow Dynamo does not contend otherwise.

The second document is the Avangard Omsk Contract, whereby Mr. Ovechkin agreed to play for Avangard Omsk for the 2005-2006 season subject to his right to render that contract null and void. (Opp. Br. Exs. E-F.) In its Petition, Moscow Dynamo does not contend that

6

Mr. Ovechkin's execution of the Avangard Omsk Contract constituted an acceptance by Mr. Ovechkin of Moscow Dynamo's April offer. Indeed, this is not a letter from Mr. Ovechkin to Moscow Dynamo, let alone an agreement by him to arbitrate anything with Moscow Dynamo.

The last document of the "exchange" is a letter dated July 1, 2005 from Moscow Dynamo *to the Russian Professional Hockey League.* (Opp. Br. Ex. H.) Again, it is undisputed that Mr. Ovechkin never replied to this letter – which was not even addressed to him – and Moscow Dynamo does not contend otherwise. Rather, Moscow Dynamo claims that this is its "matching" letter, which purported to "creat[e] a binding agreement between [Mr.] Ovechkin and Moscow Dynamo for the 2005-2006 hockey season."[5] (Pet. ¶ 15.)

None of these is a document by Mr. Ovechkin affirmatively constituting his agreement with Moscow Dynamo to arbitrate a dispute about whether he has breached a purported agreement to play for it during the 2005-2006 season. That alone means that they are insufficient to satisfy Article II.

Additionally, all these documents do is allegedly create the purported 2005-2006 Moscow Dynamo Contract – nothing more. Because, as discussed in Point I.A above, that agreement does not satisfy the jurisdictional requirements of Article II(2) of the Convention, Moscow Dynamo's attempt to rely on the documents supposedly creating that agreement is equally unavailing and cannot support subject matter jurisdiction here.

---

[5]  Ironically, Moscow Dynamo contends that its July 1 "matching" offer purportedly incorporated all of the terms of the Standard Players' Contract (Opp. Br. at 12), but then conveniently ignores critical provisions of the Standard Player's Contract. For instance, paragraph 8.3 provides, in pertinent part, that "the Contract comes into effect the moment it is *signed.*" (2004-2005 Moscow Dynamo Contract (Pet. Ex. B, Supp. 1, Doc. 1) ¶ 8.3 (emphasis added).) Similarly, the final paragraph of the Standard Player's Contract requires that parties shall sign the contract "*of their own free will.*" (*Id.* at 7 (emphasis added).) Thus, contrary to Moscow Dynamo's contention, Mr. Ovechkin could not become "bound" to any Standard Player's Contract until he signed it. Moscow Dynamo cannot selectively choose to rely on certain provisions of the Standard Player's Contract and conveniently ignore others.

**2.     Moscow Dynamo's Tendered Cases Are Clearly Inapposite**

Tellingly, the cases Moscow Dynamo relies upon provide no basis whatsoever for this Court to find an exchange sufficient to support subject matter jurisdiction here.  Although Article II(2) allows a party to establish the existence of a mutual agreement to arbitrate pursuant to an exchange of letters or telexes, Moscow Dynamo's cases confirm that it must be a true exchange, *i.e.*, a written offer to arbitrate by one party *that is accepted by the other via a confirming, responding document, through performance, or both.*  Indeed, a review of those cases demonstrates clearly that, in each and every case, the party opposing arbitration agreed to arbitrate by its *affirmative* conduct evidencing its acceptance of the other party's offer to arbitrate.

In *Standard Bent Glass Corp. v. Glassrobots Oy*, the plaintiff agreed to arbitrate its dispute with the defendant pursuant to an exchange of letters because it received a proposed sales agreement from the defendant containing an arbitration clause and responded by accepting the agreement subject to certain changes not affecting the arbitral provision.  Also, the plaintiff performed under the agreement by accepting defendant's services.  333 F.3d 440, 446 (3rd Cir. 2003).

Similarly, in *Genesco v. T. Kakiuchi & Co., Ltd.*, the plaintiff agreed to arbitrate with the defendant because it accepted the defendant's written sales confirmation forms, which contained arbitral clauses, without objection or initialed them.  Also, the plaintiff performed under the agreement by accepting shipments of goods from the defendants.  815 F. 2d 840, 845-46 (2d Cir. 1987).

In *Chloe Z. Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, the defendant agreed to arbitrate because the plaintiff's insurance broker submitted "slips" to the defendant requesting

insurance pursuant to the terms of the standard insurance policies that contained arbitral clauses, and the defendant affixed its stamp on the "slips" and thereafter issued certificates of insurance to the plaintiffs' broker, which again included references to the standard insurance policies. 109 F. Supp. 2d 1236, 1248 and 1250-51 (S.D. Cal. 2000).

And in *Filanto, S.p.A. v. Chilewich Int'l Corp.*, the plaintiff agreed to arbitrate because the defendant signed and sent to the plaintiff a Memorandum Agreement that expressly provided that the parties would arbitrate all disputes as provided in a master Russian Contract and, although the plaintiff initially rejected the arbitration provision therein, it subsequently sent a letter to the defendant affirmatively purporting to rely on various provisions of the Russian Contract that it had allegedly rejected. 789 F. Supp. 1229, 1231, 1240-41 (S.D.N.Y. 1992).

Here, there is no response by Mr. Ovechkin (either by confirming document or performance) that can in any way be interpreted as his acceptance of Moscow Dynamo's offer to arbitrate disputes regarding the 2005-2006 hockey season. Indeed, Moscow Dynamo has not cited a single case that suggests that a unilateral attempt by one party to impose arbitration on the other qualifies as a sufficient exchange of documents to create an arbitration agreement that satisfies the requirements of Article II(2) of the Convention. In fact, *Sen Mar, Inc. v. Tiger Petroleum Corp.* holds just the opposite. 774 F. Supp. 879, 882-83 (S.D.N.Y. 1991).

Moscow Dynamo has not established any written agreement between it and Mr. Ovechkin – either in a signed document or in an *exchange* of documents – to arbitrate the issue in the underlying arbitration. The Petition should therefore be dismissed for lack of subject matter jurisdiction.

9

## C. THIS COURT IS NOT BOUND BY THE ARBITRATION COMMITTEE'S DETERMINATION OF AN AGREEMENT TO ARBITRATE

To attempt to overcome the absence of any authority supporting its contention that a unilateral offer to arbitrate by one party can somehow sufficiently bind the offeree to satisfy Article II(2), Moscow Dynamo points to the arbitrators' acceptance of Moscow Dynamo's assertion that the parties had a binding agreement to arbitrate. (*See* Opp. Br. 6, 11-12.) This reasoning is circular, and courts have repeatedly rejected it.

For instance, in *Czarina, L.L.C. v. W.F. Poe Syndicate*, the petitioner sought to confirm a foreign arbitral award, contending, among other things, that the court was bound to accept the arbitrators' finding of an agreement to arbitrate under Article II. The *Czarina* court "disagree[d] with this contention because accepting it would eviscerate an important principal of United States and international arbitration law," as the determination of arbitrability is reserved to the courts absent explicit agreement by the parties. 358 F.3d 1286, 1293 (11th Cir. 2004).

Similarly, in *Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, the court rejected plaintiff's argument that it "lack[ed] authority to question the judgment of the Chinese arbitration panel … that there was a contract subject to arbitration," holding that the court "should make an independent determination of the [contract's] validity, and therefore the arbitrability of the dispute." 2005 WL 1118130, *6, 8 (D. Kan. May 10, 2005).

In sum, an arbitrator's decision does not, *ipso facto*, establish the existence of an agreement to arbitrate, let alone one sufficient under Article II. Indeed, to accept Moscow Dynamo's argument would render Article II meaningless in an enforcement proceeding because arbitrators necessarily determine that there was an agreement to arbitrate in order to render an award. Indeed, Article II of the Convention does not envision that courts should rubber stamp foreign arbitral awards. Instead, it requires that they exercise their independent judgment to

ensure that such awards are the product of actual agreements by the parties to arbitrate their disputes.

## II. MOSCOW DYNAMO'S REQUEST THAT THIS COURT DECIDE THE MERITS OF THE PETITION BEFORE MR. OVECHKIN HAS ANSWERED SHOULD BE REJECTED

A petition to confirm an arbitral award is the equivalent of a complaint, and the respondent's responsive pleading is the equivalent of an answer.[6] Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure provides that, where a party moves under Rule 12, such as to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), that party's answer is not due until ten days after a denial of that motion unless the court orders otherwise. FED. R. CIV. P. 12(a)(4)(A). Consistent with that rule and standard practice, on November 30, 2005, this Court ordered that Mr. Ovechkin was "not required to file a responsive pleading at this time" as urged by Moscow Dynamo and instead provided that this motion to dismiss would be resolved first.

Despite this ruling and under the guise of "avoiding delay," Moscow Dynamo urges the Court in its opposition papers to ignore its ruling and, "assuming that the pending motion is denied, [] immediately [] address the merits of [its] enforcement proceeding." (Opp. Br. at 3.) Moscow Dynamo's request is the equivalent of asking this Court to enter a judgment against Mr. Ovechkin before he has answered and asserted the defenses that are available to him. Moscow Dynamo has not cited any precedent, and Mr. Ovechkin is not aware of any, that would allow a court to enter a judgment against a non-defaulting defendant before he answers the complaint. Indeed, Moscow Dynamo's proposal would violate basic notions of procedural due process and invites this Court to commit reversible error.

---

[6] Indeed, Moscow Dynamo today moved to supplement its Petition pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.

11

Moreover, Moscow Dynamo's request for reconsideration of this Court's November 30 order is untimely as it was required to have been made within 10 days of the original order. *See Richardson v. Aetna U.S. Healthcare*, 2003 WL 24009007, at *1 (D.D.C. Sept. 29, 2003) (denying petitioner's motion to reconsider and stating that, "[a]lthough the Federal Rules of Civil Procedure do not expressly provide for a Motion for Reconsideration, a District Court may treat such a motion as a motion to alter or amend judgment pursuant to Rule 59(e) if filed within 10 days of the judgment").

Further, Moscow Dynamo makes its request on the pretense of an alleged need for an expeditious ruling on its Petition, but, significantly, Moscow Dynamo's request was not made until December 16, 2005 – *two and a half weeks after this Court's ruling.* This intentional delay (one of many) speaks volumes about Moscow Dynamo's purported need for speed. Its constant refrain of needing to expedite this proceeding is only conveniently asserted when it believes it can be used to deprive Mr. Ovechkin of his right to defend adequately against the enforcement of the so-called Award.

Indeed, Moscow Dynamo is the one that has delayed at every stage of the proceedings – not Mr. Ovechkin. Moscow Dynamo knew by mid-July, 2005 that Mr. Ovechkin was not going to play hockey for Moscow Dynamo during the 2005-2006 season, and yet it did not commence the arbitration until over two months later. (Pet. ¶¶ 1, 16.) Similarly, although Moscow Dynamo received the Award on October 21, 2005, it did not seek to enforce it until a month later on November 18, 2005.[7] And, most recently, Moscow Dynamo waited until December 19, 2005 – a full month after filing its Petition – to provide the certifications that are plainly required by

---

[7] Moscow Dynamo's excuse that it took over three weeks to have the documents translated is simply not credible in light of its purported desire to move expeditiously. (Opp. Br. 4, n.4.) In fact, the vast majority of the Russian documents (all but the Award itself) could and should have been translated in advance.

12

Article IV(1) of the Convention before a party can seek recognition and enforcement of a foreign arbitral award. In contrast, Mr. Ovechkin has acted to move this proceeding along expeditiously, including filing his motion to dismiss seven business days after the status conference and filing this reply brief *one business day* after receiving Moscow Dynamo's opposition papers.

In light of the foregoing, it is outrageous that Moscow Dynamo, after sitting on its hands for over two weeks, has the temerity to ask this Court to address immediately "the merits" of the Petition before Mr. Ovechkin has submitted his answer. Accordingly, Moscow Dynamo's request should be summarily denied.

Instead, in the unlikely event that this Court holds that there is subject matter jurisdiction over the Petition, Mr. Ovechkin proposes the following truncated schedule to accommodate Moscow Dynamo's purported need to move with speed.

- First, one week after receiving the Court's order, Mr. Ovechkin file his answer to the Petition. Mr. Ovechkin currently intends to raise at least four Article V affirmative defenses to enforcement of the Award. First, pursuant to Article V(1)(a), the Award is not enforceable because any underlying agreement to arbitrate is not valid under Russian law as the purported 2005-2006 Moscow Dynamo Contract is not effective until signed by Mr. Ovechkin of his own free will. Second, pursuant to Article V(1)(a), the Award is not enforceable because any underlying agreement to arbitrate is not valid under Russian law as the assertedly triggering Avangard Omsk Contract was null and void before the effective date of the purported 2005-2006 Moscow Dynamo Contract. Third, pursuant to Article V(2)(b), the Award is not enforceable

13

because it was the result of bias and/or corruption in violation of United States public policy.[8] Fourth, pursuant to Article V(2)(b), the Award is not enforceable because Mr. Ovechkin, as a non-signatory, cannot be bound to the arbitration agreement without violating United States public policy.

- Second, with his answer, Mr. Ovechkin would simultaneously serve discovery requests narrowly tailored to his answer and affirmative defenses. Presently, Mr. Ovechkin anticipates deposing Moscow Dynamo's president given his statements in the press, the Arbitration Committee given their apparent bias and lack of independence and possible corruption, and any Russian law expert upon which Moscow Dynamo intends to rely. Assuming Moscow Dynamo's cooperation and assistance, those depositions can happen expeditiously, but that is out of Mr. Ovechkin's control given the constraints inherent with a proceeding concerning a foreign arbitration.

- Third, one week after completion of discovery, Mr. Ovechkin would move for summary judgment on his Article V defenses.

This proposed schedule accommodates both Moscow Dynamo's stated concern about proceeding expeditiously and Mr. Ovechkin's right to due process in this proceeding.

---

[8] Moscow Dynamo's contention that a party can never challenge an award that is rendered by a bias or corrupt arbitral tribunal is nonsense and would violate U.S. public policy. *See York Hannover Holding A.G. v. Am. Arbitration Ass'n.*, 1993 WL 159961, *5, n.4 (S.D.N.Y. May 11, 1993) ("An award rendered by a panel that was tainted with bias or impartiality may conceivably be set aside under the Convention as violative of public policy and thus within Article V(2)(b)").

**CONCLUSION**

Respondent Alexander M. Ovechkin respectfully requests that this Court dismiss Moscow Dynamo's Petition to enforce the Award for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Dated:          December 19, 2005

                                        Respectfully submitted,


                                        /s/ Peter J.W. Sherwin_____ _
                                        Peter J.W. Sherwin (admitted *pro hac vice*)
                                        Steven H. Holinstat (admitted *pro hac vice*)
                                        Edward T. Werner (admitted *pro hac vice*)
                                        PROSKAUER ROSE LLP
                                        1585 Broadway
                                        New York, NY  10036-8299
                                        Phone:  212.969.3261

                                             -and-

                                        /s/ Robert M. Bernstein_____ _
                                        Robert M. Bernstein (D.C. Bar No. 490166)
                                        PROSKAUER ROSE LLP
                                        1233 Twentieth Street NW, Suite 800
                                        Washington, DC  20036-2396
                                        Phone: (202) 416-6800

15